IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|   |   |   |
|---|---|---|
| MAYA SPEIGHTS-CARNEGIE, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 15 C 3781 |
| Plaintiff, | | Judge Virginia M. Kendall |
| v. | | |
| THE BLACKSTONE CONDOMINIUM ASSOCIATION; THE PROPERTY LAW GROUP, LLC; and EBONY-DAWN LUCAS | | |
| Defendant. | | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Maya Speights-Carnegie filed her First Amended Complaint against the Blackstone Condominium Association, the Property Law Group, LLC, and Ebony-Dawn Lucas for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA"), Consumer Fraud Act, 815 ILCS 505/1 *et seq*. ("ICFA"), and Illinois law of trespass. Defendants move to dismiss Plaintiff's First Amended Complaint pursuant to the *Rooker-Feldman* doctrine, Illinois doctrine of *res judicata*, and Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, Defendants' Motion to Dismiss is granted in part and denied in part. (Dkt. No. 32).

**I. Background**

Plaintiff formerly owned a condominium located at 6509 South Blackstone, Unit 1, in Chicago, Illinois. (First Am. Compl. at ¶ 7). At some point prior to April 2014, Blackstone informed Plaintiff that she was in default for a debt incurred for "past-due condominium assessments, late charges, attorney fees, costs and for services and repairs that Defendants assert had to be performed on her condominium." (*Id*.) Blackstone hired PLG and Ebony-Dawn Lucas,

1

the principal of PLG, to collect this debt from Plaintiff. (*Id*. at ¶ 9). On April 29, 2014, Blackstone—through its attorneys, PLG—filed a complaint against the Plaintiff in the Circuit Court of Cook County, Illinois, Case No. 2014 M1 125041. (*Id*.) The state court complaint alleged that "as a result of [Plaintiff's] failure to pay assessments the Association was damaged in the amount of $6,396.00" and that Defendants were entitled to recover attorney fees and costs. (*Id*. at ¶ 10). Defendants also attempted to collect $475 from Plaintiff in late fees. (*Id*. at ¶ 46).

Five months later, on September 19, 2014, Plaintiff called PLG "in connection with the alleged debt" and spoke with Lucas. (*Id*. at ¶ 24). During that conversation, Lucas did not inform Plaintiff that she was a debt collector or provide her with the amount of the debt owed or the name of the creditor to whom the debt was owed. (*Id*. at ¶¶ 25-30). Lucas informed Plaintiff she would send her a "ledger" but did not do so immediately following the call. (*Id*. at ¶ 31).

On November 14, 2014, Lucas provided a ledger to Plaintiff's counsel ("Ledger 1") stating that Plaintiff owed Blackstone $7,265.75 in assessments, late fees, and additional expenses. (*Id*. at ¶ 11). Plaintiff alleges that Ledger 1 falsely stated that Plaintiff owed $1,500 in attorney fees to Blackstone, (*id*. at ¶¶ 12, 20), and that work completed in Plaintiff's condo cost $2,063.75, (*id*. at ¶ 21). Plaintiff also claims that Ledger 1 did not account for $1,388.00 in rent received by Blackstone. (*Id*. at ¶¶ 13, 22).

On March 4, 2015, Lucas and PLG provided Plaintiff with a new ledger ("Ledger 2") that accounted for the $1,388.00 in rent received by Blackstone. (*Id*. at ¶ 38). On April 8, 2015, Lucas informed the state court judge presiding over Blackstone's action against Plaintiff that the $1,388.00 rental payment should not offset Plaintiff's alleged debt balance. (*Id*. at ¶ 39). That same day, the presiding state court judge found that Plaintiff owed $125 in late charges. (*Id*. at ¶ 44). On July 30, 2015, he found that Plaintiff owed Blackstone $2,913.00. (*Id*.)

In addition to the monetary debt at issue, Plaintiff also challenges Blackstone's physical entry onto her former property. Plaintiff claims that in November 2011, she had the exclusive right of possession in the subject property; that court order authorized Blackstone to take possession of the property on January 8, 2012; and that Blackstone, without consent, entered the property in November 2011 and began renting it to a third party shortly thereafter. (*Id*. at ¶¶ 75-79). Plaintiff claims she was unable to use the property and lost potential rental income as a result of Blackstone's conduct. (*Id*. at ¶ 79).

**II. Legal Standards**

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When a defendant brings a facial challenge to subject matter jurisdiction, "the district court must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor, unless standing is challenged as a factual matter." *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688, 691 (7th Cir. 2015). If, however, as here, a defendant factually challenges the basis for federal jurisdiction, "the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (citation and internal quotation marks and annotation omitted).

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See* Fed. R. Civ. P. 12(b)(6). To survive dismissal, a complaint must provide enough factual information to "state a claim to relief that is plausible on its face." *Defender Sec. Co. v. First Mercury Ins. Co.*, 803 F.3d 327, 334 (7th Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court draws all reasonable inferences and construes all facts in the light most favorable to the plaintiff. *See Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014).

**III. Discussion**

**A. Subject Matter Jurisdiction**

Defendants PLG, Lucas, and Blackstone argue that Plaintiff's claims arise from underlying state court proceedings regarding unpaid condo assessments. They therefore contend that the Court lacks subject matter jurisdiction over all three Counts in the First Amended Complaint because those claims are barred under the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine divests district courts from exercising jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (citing 28 U.S.C. § 1257); *see also Iqbal v. Patel*, 780 F.3d 728, 730 (7th Cir. 2015). If the state court "just failed to remedy an injury that predated the litigation (or is independent of it), […], the federal district judge should apply principles of issue and claim preclusion under 28 U.S.C. § 1738 rather than dismiss for want of jurisdiction…" *See Harold v. Steel*, 773 F.3d 884, 886 (7th Cir. 2014). "The doctrine applies not only to claims that were actually raised before the state court, but also to claims that are inextricably intertwined with state court determinations." *See Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 603 (7th Cir. 2008).

The doctrine only applies here with respect to the attorney fees sought in the Circuit Court because the other alleged violations of the FDCPA, ICFA, and state law of trespass were independent of and complete prior to the entry of the state court order. *See Long v. Shorebank*

*Dev. Corp.*, 182 F.3d 548, 556 (7th Cir. 1999) (finding FDCPA counts alleging defendants falsely represented the character, amount, and legal status of debt owed independent of and complete prior to the entry of the eviction order); *compare with Kelley*, 548 F.3d at 605 (dismissing FDCPA claim where defendants needed to convince state court they were entitled to attorney fees to succeed in extracting money from plaintiffs).

Plaintiff claims that Defendants' attempts to collect unauthorized late fees began in February 2010. Then, on April 29, 2014, Blackstone filed a state court complaint against Plaintiff for unpaid assessments and late fees. Plaintiff subsequently called PLG in connection with the alleged debt and claims that this phone call and subsequent representations made to her were false and deceptive, in violation of the FDCPA and the ICFA. These alleged misrepresentations are independent of the Circuit Court judgment. For example, one of Plaintiff's claims brought under Section 1692e of the FDCPA alleges that Defendants falsely represented the character, amount, and legal status of the alleged debt. Those allegations, if true, are sufficient to demonstrate a violation of that provision and that violation was complete prior to entry of judgment by the Circuit Court. *See, e.g., Long*, 182 F.3d at 556 (noting that alleged violation of FDCPA was complete regardless of the ultimate eviction order entered by Circuit Court and its correctness). Similarly, the elements of the alleged trespass claim were satisfied upon Blackstone's allegedly improper entry and rental of the Plaintiff's condo—regardless of the state court ruling. *See Millers Mut. Ins. Ass'n of Ill. v. Graham Oil Co.*, 282 Ill. App. 3d 129, 139 (2nd Dist. 1996) ("In Illinois, one may be liable in trespass for causing a thing or third person to enter the land of another through a negligent act or an intentional act."). Because these claims are independent of the state court judgment, the propriety of that judgment is not at issue with respect to Plaintiff's claims in this case.

The FDCPA claims arising from the attorney fees already litigated and resolved in the Circuit Court case, however, do implicate the propriety of the state court judgment and are dismissed for lack of jurisdiction. Under Illinois law, in all cases where an award of attorney fees is appropriate, "only those fees which are reasonable will be allowed, the determination of which is left to the sound discretion of the trial court." *See Wildman, Harrold, Allen and Dixon v. Gaylord*, 317 Ill. App. 3d 590, 595 (1st Dist. 2000) (internal quotation marks and citation omitted); *see also Powers v. Rockford Stop-N-Go, Inc.*, 326 Ill. App. 3d 511, 515 (2nd Dist. 2001) (noting that in contracting around general rule that unsuccessful party is not responsible for attorney fees, "contract provisions regarding attorney fees should be strictly construed and enforced at the discretion of the trial court."). "In other words, the defendants need to convince the state courts that they were entitled to attorney fees in order to succeed in extracting money from plaintiffs." *See Kelley*, 548 F.3d at 605. The Court cannot resolve this issue without determining whether the state court erred in its attorney fees judgment. *See id*. Plaintiff's FDCPA claim regarding attorney fees is dismissed with prejudice. Plaintiff's other claims are not "inextricably intertwined" with the state court judgment and *Rooker-Feldman* is unavailable as a basis for their dismissal.

### B. Rule 12(b)(6)

#### 1. Res Judicata

Alternatively, Defendants move to dismiss the First Amended Complaint under the doctrine of *res judicata*. *Res judicata* is an affirmative defense and the plaintiff need not plead around affirmative defenses. *See United States Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003); Fed. R. Civ. P. 8(c). Still, a plaintiff "may plead himself out of court by alleging (and thus admitting) the ingredients of a defense." *United States Gypsum*, 350 F.3d at

6

626. Thus, the doctrine of *res judicata* may properly be raised as a basis to dismiss a complaint pursuant to Rule 12(b)(6).

The doctrine of *res judicata* or claim preclusion "prohibits parties 'from re-litigating issues that were or could have been raised in' a previous action in which there was a final judgment on the merits." *Johnson v. Cypress Hill*, 641 F.3d 867, 874 (7th Cir. 2011) (quoting *Highway J Citizens Group v. U.S. Dep't of Transp.*, 456 F.3d 734, 741 (7th Cir. 2006)). This doctrine requires claims that are based "on the same, or nearly the same, factual allegations" to be joined. *Id.* (citing *Roboserve, Inc. v. Kato Kagaku Co., Ltd.*, 121 F.3d 1027, 1034 (7th Cir. 1997)).

Because the earlier judgment in this case was rendered by an Illinois Court, Illinois state law principles of *res judicata* apply. *See Kykta v. Ciaccio*, No. 15-2533, 2015 WL 9301235, at *2 (7th Cir. Dec. 22, 2015). Under Illinois law, *res judicata* applies to bar a subsequent action when the following requirements are met: (1) there is an identity of causes of action; (2) there is an identity of parties or their privies; and (3) a final judgment on the merits. *See Johnson*, 641 F.3d at 874 (internal citations omitted); *Highway* J, 456 F.3d at 741 (internal citations omitted). If these elements are satisfied, the prior judgment precludes claims that could have been, but were not, litigated in the first suit. *Kykta*, 2015 WL 9301235, at *2. Here, the first element is not satisfied.

Different claims, as exist in this case, constitute the same "cause of action" where they "arise from a single group of operative facts, regardless of whether they assert different theories of relief." *Kykta*, 2015 WL 9301235, at *2 (internal quotation marks omitted); *see also, e.g., Harrison v. Deere & Co.*, 533 F. App'x 644, 648 (7th Cir. 2013) (noting that the Illinois Supreme Court has adopted the "transactional test" for evaluating whether claims constituted the

7

same cause of action). Although Plaintiff's claims arise out of the assessments and late fees sought in the state court case in the most general sense, the essence of her FDCPA and CFA claims is that she was injured in the collection process. *See, e.g., Whitaker v. Ameritech Corp.*, 129 F.3d 952, 958 (7th Cir. 1997) (finding debt attachment and debt collection could not be "lumped" together as the same cause of action under the transactional approach to *res judicata* to bar FDCPA claim). Similarly, though her trespass claim is tangentially related to the state court case, it too arises from an injury suffered independent of the operative facts presented to the Circuit Court. Plaintiff's remaining claims are not barred under the doctrine of *res judicata*.

## 2. Fair Debt Collection Practices Act Claims Against Lucas

Lucas's motion to dismiss the FDCPA claim against her is denied. Lucas argues she may not be held personally liable in this case because, under the Illinois Limited Liability Company Act, "the debts, obligations, and liabilities of a limited liability company, whether arising in contract, tort, or otherwise, are solely the debts, obligations, and liabilities of the company. A member or manager is not personally liable for a debt, obligation, or liability of the company solely by reason of being or acting as a member or manager." 805 ILCS 180/10-10. This rule, however, goes on to state that an individual is liable in her capacity as a member for "all or specified debts, obligations, or liabilities of the company if: (1) a provision to that effect is contained in the articles of organization; and (2) a member so liable has consented in writing to the adoption of the provision or to be bound by the provision." 805 ILCS 180/10-10(d)(2).

In support of her motion to dismiss, Lucas did not file PLG's articles of incorporation or an affidavit claiming that the articles of organization do not impose personal liability on her and, even had she submitted such information, the Court would unlikely have been able to consider such documentation at this early stage. *See, e.g., Jeffries v. Dutton & Dutton, P.C.*, No. 05 C

4249, 2006 WL 1343629, *3 (N.D. Ill. May 11, 2006) (Kendall, J.) (refusing to consider plaintiff's affidavit stating that the Articles of Organization do not provide for member liability). Without knowing whether Lucas is or is not subject to individual liability under the terms of PLG's articles of incorporation, the Court cannot dismiss the FDCPA claim against her. Lucas's motion to dismiss Count I is denied.

### 3. Fair Debt Collection Practices Act Against All Defendants

Under the FDCPA, "a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." *See* 15 U.S.C. § 1692(e). The FDCPA "is a broad prohibition, and while § 1692e has 16 subsections describing ways by which a debt collector could violate the FDCPA, that list is nonexhaustive, and a plaintiff need not allege a violation of a specific subsection in order to succeed in a § 1692e case." *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012) (internal citations omitted). In this case, Plaintiff alleges a variety of violations under subsections 1692(e-g) in Count I of her First Amended Complaint. Defendants now move to dismiss the FDCPA claims arising from communications initiated via litigation, communications made to the judge in the state court case, and statements made by Defendants in seeking attorney fees from the state court.

As already discussed, the FDCPA claims involving attorney fees are barred under *Rooker-Feldman*. With respect to the alleged misrepresentations made to the judge in the state court case, Plaintiff maintains in her response brief that she has brought no such allegation. (*See* Dkt. No. 39, 15). The First Amended Complaint, however, does allege that Defendant Lucas informed the state court judge that rent payments made on behalf of Plaintiff should not offset Plaintiff's alleged debt balance. (*See* Dkt. No. 19, at ¶ 39). To the extent this or any other claim

9

arises from communication made to the state court judge, the Court accepts Plaintiff's response as a voluntary dismissal of those claims.

The claims involving communications made in the course of the state court litigation state a plausible claim for relief. Although "communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a)," 15 U.S.C. § 1692g(d), the communications at issue here—primarily, the subject phone call and Ledgers provided in the course of litigation—are not formal pleadings. False representations in the context of debt collection that are made in state court proceedings are sufficient to state a claim under the FDCPA and that is precisely what is at issue here.[1] *See, e.g., St. John v. CACH, LLC*, Case No. 14 C 0733, 2014 WL 3377354, at *3 (N.D. Ill. July 8, 2014) (St. Eve, J.) (*citing, e.g., Matmanivong v. Unifund CCR Partners*, No. 08 C 6415, 2009 WL 1181529, *5 (N.D. Ill. Apr. 28, 2009); *Guevara v. Midland Funding NCC–2 Corp.*, No. 07 C 5858, 2008 WL 4865550, at *5 (N.D. Ill. June 20, 2008); *Chavez v. Bownman, Heintz, Boscia & Vician*, No. 07 C 0670, at *3 (N.D. Ill. Aug. 22, 2007)); *compare with Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 473 (7th Cir. 2007) (noting "[w]e postpone to some future case, where the answer matters, the decision whether § 1692e covers the process of litigation.").

Lastly, the Court considers Defendants' argument that Plaintiff "does not state which Defendant(s) performed what Acts which constituted a violation." The First Amended Complaint, though slightly disorganized, provides sufficient facts to give the Defendants notice of the allegations against them. *See Bonnestetter v. City of Chicago*, Nos. 14-2977, 2016 WL

---

[1] Defendant also includes a three-sentence argument claiming that "to the extent that Plaintiff is basing any of her claims on alleged acts which occurred in 2011, those claims are barred by the [FDCPA] statute of limitations." (*See* Dkt. No. 32, 6). Plaintiff failed to respond to this argument, but—regardless—the Court deems the argument waived because it is impossible to tell what alleged acts Defendants are referring to in the Amended Complaint that contemplates activities from 2010 to the present. *See United States v. Alden*, 527 F.3d 653, 664 (7th Cir. 2008) ("Because it is not the obligation of this Court to research and construct the legal arguments available to parties, these arguments are waived and warrant no discussion.") (internal citation omitted); *Perez v. Illinois*, 488 F.3d 773, 776–77 (7th Cir. 2007) ( "[P]erfunctory and undeveloped arguments are deemed waived").

403215, *3 (7th Cir. Jan. 4, 2016) (internal quotation marks and citation omitted) ("The statement of the claim must sufficiently give fair notice of what the claim is and the grounds upon which it rests to the defendants."). Plaintiff provides a number of factual allegations aimed directly at Lucas, including that Lucas provided Ledger 1 to Plaintiff's counsel; Lucas spoke with Plaintiff on the phone in September 2014; Lucas failed to inform Plaintiff she was a debt collector; Lucas told Plaintiff she owed a debt; Lucas failed to inform Plaintiff of the amount of debt or to whom the debt was owed; Lucas told the state court judge that the rent payments should not offset Plaintiff's alleged debt balance. With respect to PLG, Plaintiff alleges—for example—that neither PLG nor Lucas provided Plaintiff or her counsel written validation notice containing the information required to be communicated by 15 U.S.C. § 1692g; that Lucas and PLG provided Plaintiff with Ledger 2; and that PLG was the company of which Lucas was the Principal. From these and other facts alleged in the First Amended Complaint, Defendants are adequately apprised of the factual claims against them.

### 4. Illinois Consumer Fraud Act

Plaintiff has also sufficiently stated a claim under the Illinois Consumer Fraud Act. To state a claim for unfair labor practice under the ICFA, a plaintiff must allege: "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; and (3) the occurrence of the deception during a course of conduct involving trade or commerce." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 417 (2002). Blackstone maintains that Plaintiff failed to adequately allege that it was involved in trade or commerce; that Plaintiff was a consumer; or that a fraud was committed. These arguments are unavailing.

Blackstone, as the condominium association responsible for collecting fees and providing work and services for condominium owners, was clearly involved in trade or commerce within

11

the meaning of the ICFA; and the Plaintiff, as an owner providing fees to Blackstone in exchange for those services, was a consumer. *See Bd. of Managers of Weathersfield Condo. Ass'n v. Schaumberg Ltd. P'ship*, 307 Ill. App. 3d. 614, 624 (1st Dist. 1999) (finding condo association stated cause of action under ICFA against developer/seller of apartment complex); *People ex rel. Daley v. Datacom Systems Corp.*, 176 Ill. App. 3d 697, 708 (1st Dist. 1988) (citing Ill. Rev. Stat.1987, ch. 121½, par. 261(f)) ("trade or commerce" are defined by the ICFA to include the sale of any services directly or indirectly affecting the people of this State Illinois; courts construe the terms "trade or commerce" liberally). Plaintiff's basic allegation is that Blackstone, "via its agents Lucas and PLG, made misrepresentations to Plaintiff regarding the amount of the alleged debt, including but not limited to the representations that certain amounts for attorney fees, court costs, repair costs, late fees and assessments were due from Plaintiff, when in fact such costs, fees, and assessments could not legally be imposed, were fabricated, and thus were not due from Plaintiff." This allegation arises directly out of the payor-payee relationship between Blackstone and the Plaintiff and is sufficient to establish the "trade or commerce" and "consumer" requirements of the ICFA.

Plaintiff has also sufficiently alleged a fraud. Blackstone's argument to the contrary is cursory and undeveloped. After setting forth several statements of law, Blackstone merely argues: "Plaintiff alleges multiple conclusory statements regarding alleged misrepresentations, however, she fails to allege by whom the representations were made, to whom they were made, and when they were made." As stated above, the Court finds that Plaintiff has pled sufficient facts regarding who made the alleged misrepresentations, to whom they were made, and when they were made. Plaintiff presents no new argument here and the Court will not venture to construe one. *See Pine Top Receivables of Ill., LLC v. Banco de Deguros del Estado*, 771 F.3d

980, 987 (7th Cir. 2014) ("perfunctory and undeveloped arguments" are deemed waived). Blackstone's motion to dismiss Count II is denied.

### C. 735 ILCS 5/2-615 Motion to Dismiss Count III

Blackstone moves pursuant to 735 ILCS 5/2-615 to dismiss Plaintiff's state-law trespass claim against it. Preliminarily, the Court notes that Section 615 is the Illinois rule governing motions to dismiss for failure to state a claim and does not govern this motion to dismiss brought in federal court. *See Johnsons v. Bottling Co. of Wis.*, 125 F.3d 408, 417 (7th Cir. 1997) (internal quotation marks omitted) ("[I]t is rudimentary that pleading requirements in the federal courts are governed by the federal rules and not by the practice of the courts in the state in which the federal court happens to be sitting."); *Colton v. Swain*, 527 F.2d 296, 304 (7th Cir. 1975) (fact that complaint may have failed to meet Illinois pleading requirements not determinative, federal requirements govern).

Substantively, Blackstone argues that Plaintiff fails to allege "actual possession" of the property. Blackstone fails, however, to provide authority for the proposition that "actual possession" is required to plead trespass under Illinois Law and—on the contrary—it appears not to be a requirement. *See Tzakis v. Advocate Health & Hospitals Corp.*, 2015 IL App (1st) 142285-U, *8 (internal quotation marks omitted) (To plead intentional trespass, a plaintiff must allege facts showing that the defendant: "(1) caused an intrusion of the plaintiff's premises; and (2) did so with knowledge that its actions would, to a substantial certainty, result in the intrusion."); *Falejczyk v. Meo*, 31 Ill. App. 2d 372, 377 (2nd Dist. 1961) ("The gist of trespass on realty is the injury to possession, and the general rule is that either actual or constructive possession is sufficient to maintain the action."). Count III is sufficiently pled to survive this motion to dismiss.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss [32] is granted in part and denied in part.


Date: __5/10/2016_____          _/s/Virginia M. Kendall_
                                   Virginia M. Kendall
                                   United States District Court Judge
                                   Northern District of Illinois