IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MAYA SPEIGHTS-CARNEGIE, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | 15 C 03781 |
| ) | |
| THE BLACKSTONE CONDOMINIUM ) | Judge Virginia M. Kendall |
| ASSOCIATION, THE PROPERTY LAW ) | |
| GROUP, LLC, and EBONY-DAWN LUCAS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Maya Speights-Carnegie filed a Complaint against the Blackstone Condominium Association, the Property Law Group, LLC ("PLG"), and Ebony-Dawn Lucas for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Plaintiff also filed a Motion for Summary Judgment. For the following reasons, the Court grants Plaintiff's Motion for Summary Judgment [56].

## STATEMENT OF UNDISPUTED MATERIAL FACTS

The Court must start with the unfortunate shortcomings of counsel for the Defendants who failed to ever file an answer to the Amended Complaint until after the summary judgment briefing and failed to appear on numerous occasions in court. Although Plaintiff would like this Court to deem all of the claims admitted and cites to some precedent for this outcome, see *Wehrs v. Wells*, 688 F.3d 886, 889 (7th Cir. 2012), Plaintiff's counsel had every opportunity to seek default long ago and failed to do so. Plaintiff's counsel sought numerous extensions of time to file a motion for summary judgment—indicating that Defendants' counsel are not the only party at fault. (*See* Dkt. 53.) Although Defendants' attorneys are not "paragons of responsible

1

lawyering," their actions do not rise to the level of warranting an entry of default against their clients. *Sun*, 473 F.3d at 811.

However, Defendants' failure to comply with the local rules as far as the motion for summary judgment is concerned deems Plaintiff's statement of facts admitted. Counsel for Defendants failed to respond to Plaintiff's Statement of Facts in compliance with the Northern District of Illinois' Local Rule 56.1. In response to Plaintiff's Rule 56 statement, counsel filed "Defendants' Response to Plaintiff's Motion for Summary Judgment," which attached an affidavit of Defendant Lucas. (Dkt. 57.) The statement of facts section of the Response includes a chronology of the pleadings as well as a recitation of the state court's findings. (Dkt. 57 at 1). Defendants provide this information in three unnumbered paragraphs, which fail to respond directly to the facts asserted by Plaintiff. (Dkt. 57 at 1–2.) In accordance with the rules, in opposing a summary judgment motion a party must provide:

> (3) a concise response to the movant's statement that shall contain:
>
> > (A) numbered paragraphs, each corresponding to and stating a concise summary of the paragraph to which it is directed, and
> >
> > (B) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
> >
> > (C) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon. Absent prior leave of Court, a respondent to a summary judgment motion shall not file more than 40 separately- numbered statements of additional facts. All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.

*See* LR 56.1(3). Defendants' counsel did not follow this rule and failed to support any

objections with documented evidence for the Court's review. Since district courts are entitled to enforce strict compliance with Rule 56.1, Defendants' Statement of Facts will be disregarded and Plaintiff's Statement of Facts is deemed admitted. *See Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817–18 (7th Cir. 2004) (district court did not abuse its discretion when it struck responses to statement of facts which were not included as a separate statement as envisioned by Rule 56.1); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission."); *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015) (explaining that the Seventh Circuit has "routinely upheld the district court's discretion in requiring parties to comply strictly with local rule requirements."); *F.T.C. v. Bay Area Bus. Council*, Inc., 423 F.3d 627, 633 (7th Cir. 2005) (noting the important function of Rule 56.1 in "organizing the evidence and identifying disputed facts"). The affidavit attached to Defendants' Response also fails to comply with the requirements of Rule 56.1. *See Bay Area*, 423 F.3d at 633 (finding the affidavit attached to the response did not constitute compliance with Rule 56.1). Accordingly, the Court accepts as true the facts in Plaintiff's Rule 56.1 statement, and views these facts in the light most favorable to Defendants as the nonmoving party. *Id.* at 634.

The following facts, therefore, are taken from Plaintiff's Statement of Facts and supported by the record and are not disputed.

Plaintiff owned a condominium located at 6509 South Blackstone, Unit 1, in Chicago, Illinois. (Dkt. 19 ¶ 7.) Plaintiff incurred a debt connected to this property purported by Defendants to be for a post-due assessment, late charges, attorney fees, and services Defendant Blackstone claims had to be performed on Plaintiff's condominium. (Dkt. 19 ¶ 1.) Blackstone hired Lucas, principal of Property Law Group ("PLG") to collect the debt from Plaintiff. (Dkt.

19 ¶¶ 5, 19.) According to Plaintiff, the record reflects the following communications were made to her in violation of the FDCPA: (1) Plaintiff's phone call to PLG on September 9, 2014[1] wherein she spoke with Lucas who failed to provide her with the amount of the debt owed or identify to whom the debt was owed; (2) the ledger emailed to Plaintiff's counsel on November 14, 2014 indicating Plaintiff owed $1500 in attorney's fees, $2063.75 in repair costs, and $450 in late charges; (3) the letter mailed to Plaintiff's counsel on March 4, 2015 including a ledger indicating Plaintiff owed $1500 in attorney fees, $2063.75 in repair costs, and $600 in late charges. (Dkt. 56-1; 56-6.) Plaintiff contends that Defendants misrepresented the amount, character, and legal status of the debt they sought to collect from Plaintiff throughout these communications. (Dkt. 56-1; 56-6 ¶¶ 6-9.)

Defendants are each a debt collector under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, as each regularly collects defaulted consumer debts. (Dkt. 56-6 ¶ 1.) The debt was a consumer debt in default and a debt under the FDCPA. (Dkt. 56-6 ¶ 2.) Further, Plaintiff is a consumer as defined by the FDCPA. (Dkt. 56-6 ¶ 3.)

On behalf of Blackstone, Defendants Lucas and PLG filed a complaint against Plaintiff in the Circuit Court of Cook County, Illinois on April 29, 2014. (Dkt. 56-6 ¶ 10.) The complaint, *Blackstone Condominium Association v. Maya Speights Carnegie*, Case No. 2014 M1 125041, sought $6396 plus attorney fees and costs from Plaintiff. (Dkt. 56-6 ¶ 10.)

On September 9, 2014, Plaintiff called Defendant PLG and spoke with Defendant Lucas. (Dkt. 19 ¶ 24). Plaintiff claims this was the initial communication with Defendants regarding the

---

[1] Although Plaintiff repeatedly cites to the date of the phone call as both September 19, 2014 and September 14, 2014, the deposition transcript indicates that this phone call actually occurred on September 9, 2014. (Dkt. 56-3 at 90–95.)

4

debt.[2] (Dkt. 56-6 ¶ 4; Dkt. 57 ¶¶ 3–5.) Following this conversation, Defendants failed to mail a notice of debt within five days regarding the debt to either Plaintiff or her attorney. (Dkt. 56-6 ¶ 5.) Moreover, Defendants never mailed or transmitted a Notice of Debt to Plaintiff or her counsel as required under Section 1692g of the FDCPA, 15 U.S.C. § 1692g.[3] (Dkt. 56-6 ¶ 22.)

On November 14, 2014, Lucas and PLG emailed[4] Plaintiff's counsel a ledger on behalf of Blackstone. (Dkt. 56-6 ¶ 15). The ledger indicated that Plaintiff owed $1500 in attorney fees, $2063.75 in repair costs, and $450 in late charges, calculated from February 10, 2010 through July 1, 2011. (Dkt. 56-6 ¶ 16.)

On March 4, 2015, PLG and Lucas mailed Plaintiff's counsel a letter including a ledger which indicated Plaintiff owed $1500 in attorney fees, $2063.75 in repair costs for the Property, and $600 in late charges stemming from her ownership of the property. (Dkt. 56-6 ¶ 17.) This ledger accounted for the $1388.00 in rent received by Blackstone. (Dkt. 19 ¶ 38.)

On July 30, 2015[5], the parties went to trial in state court over Defendants' claim for attorney fees amounting to $1500. (Dkt. 56-3 at 185–276; Dkt. 56-6 ¶¶ 6, 21.) Following trial, the state court found that attorney fees could not legally be sought by Blackstone or Lucas. (Dkt. 56-6 ¶ 11; Dkt 56-3 at 282–88.) On December 23, 2016, the Illinois Appellate Court affirmed the state court's ruling that Lucas, PLG, and Blackstone were not entitled to any attorney fees in connection with collection litigation with Plaintiff in the state action, or relating to efforts to collect the debt from Plaintiff. (Dkt. 56-6 ¶ 20; Dkt 56-3 at 282–88.) The Court dismissed the

---

[2] This is a legal issue to be decided by the Court.
[3] This is a legal issue to be decided by the Court.
[4] Plaintiff incorrectly asserts the ledger was emailed to Plaintiff; the record indicates the ledger was emailed to Plaintiff's counsel rather than Plaintiff directly. (Dkt. 56-3 at 6-7.)
[5] Plaintiff cites to the incorrect date of trial, the transcript indicates the trial occurred on April 8th, 2015. (Dkt. 56-3 at 187.)

5

issue of attorney fees with prejudice on May 10, 2016, and will not address this dispute. (Dkt. 41 at 4–6.)

Defendants also attempted to collect $2063.75 for condominium repairs. (Dkt. 56-6 ¶ 7.) These repairs were never performed and therefore are misrepresented. (Dkt. 56-6 ¶ 7.) Defendants also attempted to collect $600 in late charges—only $125 of these charges were authorized by law or agreement and the remaining $475 are unauthorized. (Dkt. 56-6 ¶¶ 8–9; Dkt. 56-3 at 178.) On April 8, 2015, the state court judge awarded late fees from September 2011 through January 2012 in the amount of $125, explaining there was no proof that the fee was binding on Blackstone until August 2011. (Dkt. 56-3 at 257; Dkt. 56-6 ¶ 18.) Ultimately, the state court judge found that Plaintiff owed Blackstone $2,913. (Dkt. 56-6 ¶ 18; Dkt. 56-3 at 278.)

## **STANDARD OF REVIEW**

Courts grant summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A factual dispute is 'genuine' only if a reasonable jury could find for either party." *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (internal quotation marks and citation omitted). Courts properly grant summary judgment where "no reasonable jury could rule in favor of the nonmoving party." *See Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 879 (7th Cir. 2016) (citation omitted). When considering Plaintiff's Motion, the Court views all evidence in the light most favorable to Defendants as the opposing party. *See e.g.*, *Tull v. Cotton*, 134 S.Ct. 1861, 1863 (2014); *Hull v. City of Chicago*, 624 Fed.Appx 436, 437 (7th Cir. 2015); *Schlemm v. Wall*, 784 F.3d 362, 364 (7th Cir. 2015). Nonmoving parties must still present enough evidence to support

reasonable inferences, as courts "draw only the reasonable inferences[,]" and "are not required to draw every conceivable inference from the record." *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009) (internal quotations and citations omitted).

## DISCUSSION

**I.** Plaintiff filed this Complaint pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (Dkt. 19.) Plaintiff later filed this Motion for Summary Judgment. (Dkt. 56.) **Liability under Section 1692e**

In her Motion for Summary Judgment and Reply to Defendants' Response, Plaintiff moves for summary judgment of her claim under Section 1692e of the FDCPA. (Dkt. 56-1 at 8–11; Dkt. 58 at 5–7.) Defendants contend that whether a debt collector violates the FDCPA is a factual dispute, and Plaintiff's motion does not state she was deceived, provided false information, or misled. (Dkt. 57 at 5–6.)

Under Section 1692e(2) of the FDCPA, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt[,]" including "the false representation of—(A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." 15 U.S.C. § 1692e(2) (2012). Section 1692e applies regardless of the intentionality of a false representation. *See Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000). To evaluate claims arising under Section 1692e, courts use the "unsophisticated consumer" standard. *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012). "For purposes of § 1692e, then, a statement isn't 'false' unless it would confuse the unsophisticated consumer." *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009). The unsophisticated consumer may be "uninformed, naïve, [and] trusting," *Veach v. Sheeks*, 316 F.3d

7

690, 693 (7th Cir. 2003), but she is not a dimwit. *Lox*, 689 F.3d at 822. The unsophisticated consumer possesses "rudimentary knowledge about the financial world" and is "capable of making basic logical deductions and inferences[.]" *Wahl*, 556 F.3d at 644 (quoting *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000)). Whether an unsophisticated consumer could find debt collection language misleading is treated as a question of fact. *Lox*, 689 F.3d at 822.

Since the information presented in the communications was false, the unsophisticated consumer standard still applies even though communications were directed at Plaintiff's attorney. (Dkt. 19 ¶¶ 21, 49, 50;) *see Evory v. RJM Acquisitions Funding, LLC*, 505 F.3d 769, 775 (7th Cir. 2007) (explaining a lawyer might be unable to discover the falsity of a representation without further investigation, thus, a false claim of fact communicated to an attorney is actionable); *see also Carpel v. Specialized Loan Servicing, Inc.*, No. 15 C 09145, 2016 WL 4678313, at *6 (N.D. Ill. Sept. 7, 2016) ("Where a debtor alleges instead that the communication was false, as opposed to misleading or deceptive, the 'unsophisticated consumer' standard governs—no matter the targeted recipient.").

Three categories of 1692e cases exist: (1) "cases in which the allegedly offensive language is plainly and clearly not misleading[;]" (2) language that is not misleading or confusing on its face, but may potentially mislead the unsophisticated consumer; (3) language that is plainly deceptive or misleading. *Lox*, 689 F.3d at 822. When cases fall into the third category, courts grant summary judgment for the plaintiff without requiring the plaintiff to produce evidence. *See Ruth v. Triumph P'ships*, 577 F.3d 790, 801 (7th Cir. 2009); *see also* Chuway v. Nat'l Action Fin. Servs., Inc., 362 F.3d 944, 948 (7th Cir.2004) (explaining the

court's determination that the letter was confusing eliminated the plaintiff's burden to produce evidence).

Plaintiff's case falls within the third category of 1692e cases as Plaintiff alleges that Defendants falsely represented the amount, character, and legal status of the debt they sought to collect from Plaintiff. The ledger emailed to Plaintiff's attorney on November 14, 2014 indicates that Plaintiff owed $1500 in attorney fees, $2063.75 in repair costs, and $475 in late charges, and the letter sent on March 4, 2014 reiterated these charges. (Dkt. 56-3 at 6–7; Dkt. 56-3 at 177–78.) The state court concluded that Plaintiff did not owe any of these represented charges. (Dkt. 56-6 ¶¶ 10–14; Dkt. 56-3 at 257–58.) As Plaintiff suggests, the state court findings are subject to the doctrine of collateral estoppel, which involves the following elements: (1) the issue must be the same as the issue involved in the prior action; (2) the issue was actually litigated; (3) determination of the issue was essential to the final judgment; (4) the parties are the same or in privity with the parties in the prior action. *DeGuelle v. Camilli*, 724 F.3d 933, 936 (7th Cir. 2013); *Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir. 1987); (Dkt. 56-1 at 9.) The issue of whether Defendants falsely represented the amount of money owed by Plaintiff for attorney fees, repair costs, and late charges is the same as the issue decided by the state court. (Dkt. 56-3 at 257–58; Dkt. 56-6 ¶¶ 10–14.) Further, this issue was fully litigated at the state court level through a trial. (Dkt. 56-3 at 186–276.) Defendant Blackstone had the opportunity to appeal this decision, but only appealed the trial court's denial of the attorney fee petition. (Dkt. 56-3 at 282-87.) Further, the determination of this issue was essential to the final judgment as the state court evaluated the legitimacy of the charges represented by Defendant Blackstone and whether Plaintiff owed these charges. (Dkt. 56-3 at 1–4, 257–58). Finally, Defendant Blackstone was a party to the prior action. (Dkt. 56-3 at 3–4.) Although Lucas and PLG were not parties, they were

9

in privity with Blackstone. "Privity between parties is established where those parties' interests are so closely aligned that they represent the same legal interests." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 315 (7th Cir. 1985). By failing to dispute or address Plaintiff's privity argument, Lucas and PLG in effect concede that they are in privity with Blackstone. *See Rymer Foods, Inc. v. Morey Fish Co.*, No. 96-4139, 1997 WL 358870, at *6 (7th Cir. June 23, 1997). Even if Defendants had addressed the privity issue, PLG and Lucas were in privity with Blackstone, as the legal representatives of Blackstone in the previous suit, and cannot relitigate the issues decided against Blackstone. *See Aguilera v. Freedman*, No. 10–cv–5488, 2011 WL 2292302, at *1, *7 (finding all elements of collateral estoppel satisfied when the law firm representing the defendant in the state court action was a defendant in the federal court FDCPA action).

Therefore, collateral estoppel applies to the issue that Plaintiff did not owe $1500 in attorney fees, $2063.75 in repair costs, and $475 in late charges. Since the communications transmitted by Defendants to Plaintiff indicated that Plaintiff owed these fees, the communications were plainly false. (Dkt. 56-6 ¶¶ 15, 17.) *See, e.g., Mehling v. Fullett Rosenlund Anderson PC*, No. 16 C 5921, 2016 WL 7231931, at *5 (N.D. Ill. Dec. 12, 2016) (explaining the court could not conclude that defendant's overstatement of the debt by $200 in a motion was immaterial); *see also Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 127 (4th Cir. 2014) (explaining a debt overstated in excess of 50 percent could lead an unsophisticated consumer to pay more than she otherwise would have paid). Moreover, reviewing these facts under the unsophisticated consumer standard leads the Court to conclude that Defendants' representations about the amount of money owed could have led an unsophisticated consumer to pay more than she would have otherwise paid. *see also Berg v. Blatt,*

*Hasenmiller, Leibsker, & Moore LLC*, No. 07 C 4887, 2009 WL 901011, at *6 (N.D. Ill. Mar. 31, 2009) (finding the misstated amounts of the amount of money owed by plaintiffs on an affidavit provided by the defendants could mislead an unsophisticated consumer and therefore violated the FDCPA).

Additionally, the statement of undisputed material facts supports that the Plaintiff did not owe $2063.75 in repair costs and $475 in late charges. The condominium repairs, represented as $2063.75, were never performed and therefore are misrepresented. (Dkt. 56-6 ¶ 7.) Further, only $125 of the $600 Defendants represented in late charges were authorized by law or agreement and the remaining $475 were unauthorized. (Dkt. 56-6 ¶¶ 8–9; Dkt. 56-3 at 178.)

Defendants cite no support for their argument that the trier of fact must determine whether a debt collector violates the FDCPA, and this determination is appropriate at the summary judgment stage. (Dkt. 57 at 5;) *see, e.g. Ruth v. Triumph P'ships*, 577 F.3d 790, 801 (7th Cir. 2009) ("Cases involving plainly deceptive communications fall into a third category, one where we will grant summary judgment for the plaintiffs without requiring them to prove what is already clear."); *Hale v. AFNI, Inc.*, No. 08 CV 3918, 2010 WL 380906, at *11 (N.D. Ill. Jan 26, 2010) (granting the plaintiff's motion for summary judgment on the issue of liability under 1692e); *Berg*, 2009 WL 901011, at *6 (granting the plaintiff's motion for partial summary judgment to the extent that defendants misrepresented the amounts of debt and interested owed). Therefore, a trier of fact is unnecessary to determine whether a debt collector violates the FDCPA. Further, Defendants mischaracterize the law by raising issue with Plaintiff's failure to allege that she was deceived. (Dkt. 57 at 6.) As discussed above, Plaintiff is not required to allege that she was misled. *See Lox*, 689 F.3d at 826 ("[T]he unsophisticated consumer test is an objective one, meaning that it is unimportant whether the individual that actually received a

violative letter was misled or deceived."); *see also Mehling*, 2016 WL 7231931, at *5 ("Arguments about whether Plaintiffs were *actually* misled by the false statement ignores the applicable standard: because the standard is an objective one, it is irrelevant under the objective unsophisticated consumer standard whether Plaintiffs were truly misled or deceived.").

Defendants' misrepresentations could have led an unsophisticated consumer to pay substantially more than she otherwise would have paid. (Dkt. 58 at 5.) Summary judgment is granted on this claim, and Defendants are liable under Section 1692e for falsely representing the amount, character, and legal status of the debt they sought to collect from Plaintiff.

## II. Liability under Section 1692f

In her Motion for Summary Judgment and Reply to Defendants' Response, Plaintiff moves for summary judgment of the claim brought under Section 1692f of the FDCPA. (Dkt. 56-1 at 11–12; Dkt. 58 at 7.) Plaintiff argues that the $1500 in attorney fees, $2063.75 in repair costs, and $475 in late charges, which Defendants attempted to collect, were neither owed by Plaintiff nor authorized by law or any contract creating the debt. (Dkt. 56-1 at 12.) Defendants contend that whether a debt collector violates the FDCPA is a factual dispute, and Plaintiff's motion does not state she was deceived, provided false information, or misled. (Dkt. 57 at 7.)

In precluding "unfair" or "unconscionable" collections or attempts, Section 1692f involves a non-exhaustive list of prohibited conduct, including "[t]he collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1) (2012). Whether the collection of a debt violates Section 1692f(1) depends on two factors: "(1) whether the debt agreement explicitly authorizes the charge; or (2) whether the charge is permitted by law." *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 996 (7th Cir. 2003). The unsophisticated consumer standard applies to Section

1692f, just as it applied in analyzing Plaintiff's claim under Section 1692e, to effectuate the overall purposes of the FDCPA. *Id.* As explained above, Defendants' communication is viewed through the eyes of an unsophisticated, yet reasonable, consumer. *Id.* Under this standard, the court must determine whether it would be "unfair or unconscionable means" of debt collection to represent the amount of debt owed by Plaintiff as $1500 in attorney fees, $2063.75 in repair costs, and $475 in late charges when none of these amounts were owed. (Dkt. 56-6 ¶¶ 7, 8, 9, 18, 20.)

Defendants falsely represented the amount of the debt owed by Plaintiff as she did not owe the attorney fees, repair costs, and late charges. (Dkt. 56-6 ¶¶ 6–9.) Further, the statement of undisputed material facts indicates that these charges were not authorized by law or agreement, and Defendants do not present evidence to show they were authorized. (Dkt. 56-6 ¶¶ 8, 9, 11, 13, 19, 20; Dkt. 56-1 at 5–6.) Plaintiff contends that a violation of Section 1692e supports a violation of 1692f and cites three cases to support this claim, only one of which is a Northern District decision. (Dkt. 56-1 at 12; Dkt. 58 at 7.) The cases Plaintiff cites hold that if a debt collection letter violates Section 1692f(1), the debt collector also violates Section 1692e(2). *See, e.g., Acosta v. Credit Bureau*, No. 14 C 8198, 2015 WL 1943244, at *4 (N.D Ill. Apr. 29, 2015) ("Because this Court has concluded that Plaintiff has stated a claim under Section 1692f, Plaintiff has also stated a claim under Section 1692e.") Although the *Acosta* decision is persuasive, just because a violation of Section 1692f is also a violation of Section 1692e does not necessarily mean the reverse is true. However, as discussed above, Defendants violated Section 1692e in this case by misrepresenting the amount of the debt Plaintiff owed. Section 1692f(1) prohibits the collection of a debt that is not authorized by law or agreement, thus, Defendants' attempt to collect money from Plaintiff for attorney fees, repair costs, and late charges that were not actually owed, is both unfair and unconscionable. 15 U.S.C. § 1692f(1).

Defendants raise the same two arguments in response to Plaintiff's claims under Section 1692f: (1) whether a debt collector violates the FDCPA is a factual dispute for a trier of fact to determine, and (2) the lack of an affidavit attached to Plaintiff's motion for summary judgment prevents the court from making a determination that there are no genuine issues of material fact. As discussed above, these arguments are without merit.

Summary judgment is granted on this claim, and Defendants are liable under Section 1692f for falsely representing the amount, character, and legal status of the debt they sought to collect from Plaintiff.

### III. Liability under Section 1692g

In her Motion for Summary Judgment and Reply to Defendants' Response, Plaintiff moves for summary judgment of her claim under Section 1692g of the FDCPA as Defendants never sent a notice to Plaintiff or her counsel as Section 1692g requires. (Dkt. 56-1 at 12–14; Dkt. 58 at 3–4.) Defendants argue that the requirements under Section 1692g were never triggered since Plaintiff initiated the phone call to Defendants and the email sent to Plaintiff's counsel was filed incidental to litigation (Dkt. 57 at 4–5.)

Section 1692g(a) provides:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing-
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

14

> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g (2012). The required written notice must be sent to the consumer unless the debt collector knows the consumer is represented by a lawyer, in which case a debt collector cannot communicate directly with the consumer. *Evory*, 505 F.3d at 773. Any notice sent to a consumer's lawyer must contain the same information required by Section 1692g in a notice to a consumer. *Id.*

Although Defendants' contention that only a communication from the creditor to the debtor qualifies as an initial communication under the FDCPA is incorrect, the phone call from Plaintiff to Defendant Lucas on September 9, 2014 still fails to qualify as an initial communication under Section 1692g. (Dkt. 57 at 4.) For example, in *Kasalo v. Trident Asset Mgmt.*, the court asserted that a phone call from the consumer to the debt collector was an initial communication under the FDCPA. *See e.g.* 53 F. Supp. 3d 1072, 1076 (N.D. Ill. 2014). The Defendant in *Kasalo* orally relayed the elements of Section 1692g to the consumer during the phone call. *Id.* at 1080. Comparatively, Defendant Lucas did not provide Plaintiff with any information about the debt over the phone and told Plaintiff she could not talk to her about the debt due to her representation. (Dkt. 56-3 at 93–94.) Further, the FDCPA defines "communication" broadly as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2) (2012). Plaintiff's phone

call to Lucas on September 9, 2014 does not qualify as a "communication" as Defendants did not convey information regarding the debt to Plaintiff during the conversation.

Although the September 9, 2014 call does not qualify as an initial communication, the email from Defendants to Plaintiff's attorney on November 14, 2014 constitutes an initial communication. A letter from a debt collector to a consumer's lawyer is a communication under the FDCPA. *Evory*, 505 F.3d at 777. Section 1692g's notice requirement is triggered regardless of whether the initial communication was directed at the consumer or his attorney. *Id.* Specifically, it would be unsound "to suppose that a communication to a person's lawyer is not a communication to that person" as a consumer with a lawyer would be at a disadvantage if the debt collector was not required to provide the same notice. *Id.* The email from Defendants to Plaintiff's attorney attaches a ledger outlining the fees purported to be owed by Plaintiff. (Dkt. 56-3 at 6–7.) While this email satisfies the first requirement of Section 1692g(a) by listing the amount of the debt, it falls short of fulfilling the remaining elements. 15 U.S.C. § 1692g(a); (Dkt. 56-3 at 6–7.) Moreover, Defendants *never* sent a notice as required under 1692g(a). (Dkt. 56-6 ¶ 22.)

Defendants argue that the November 14, 2014 email to Plaintiff's counsel was incidental to litigation and therefore did not trigger the requirements of 1692g. (Dkt. 57 at 4.) Defendants support this argument by citing to 1692g(d), noting that "[a] communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a)," but do not support this argument with any case law. 15 U.S.C. § 1692g(d); (Dkt. 57 at 4.) Defendants' expansive reading of 1692g(d) would allow debt collectors to avoid the notice requirements of 1692g simply by filing a complaint. The text of 1692g(d) indicates that "formal pleading[s]" shall not be treated as initial communications; an email from a debt

collector to a consumer's lawyer is clearly not a "formal pleading." 15 U.S.C. § 1692g(d). A notice of sale does not qualify as a formal pleading for purposes of 1692e(11), which similarly creates an exception for formal pleadings. *See e.g. Heyer v. Pierce & Associates, P.C.*, No. 14 C 854, 2017 WL 75739, at *12 (N.D. Ill. Jan. 9, 2017). In *Heyer*, the court persuasively explained that a notice of sale was not a pleading as defined by Rule 7 or Black's Law Dictionary, and did not perform functions comparable to a pleading. *Id.* Similar to a notice of sale, an email is not "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer." Fed. R. Civ. P. 7(a). Further, while this email was sent in connection with the underlying state court proceeding, an email is never filed with the court as a formal pleading. (Dkt. 56-3 at 6–7.) Therefore, Defendants' email to Plaintiff's counsel on November 14, 2014 triggered the requirements of Section 1692g. Summary judgment is granted on this claim, and Defendants are liable under Section 1692g for failing to provide Plaintiff and her lawyer with a notice as required under Section 1692g.

## CONCLUSION

For these reasons, the Court grants Plaintiff's Motion for Summary Judgment against Defendants.

Date: March 28, 2018

Hon. Virginia M. Kendall
United States District Judge